1    UNITED STATES DISTRICT COURT

2    NORTHERN DISTRICT OF CALIFORNIA

3

4    ANGELA SMITH,

5                    Plaintiff,                    Case No. 15-cv-04497-TEH

6         v.                                       **ORDER GRANTING DEFENDANTS'
                                                   MOTIONS TO DISMISS**
7    UNITED STATES DEPARTMENT OF
     AGRICULTURE, *et al.*,
8
                    Defendants.
9

10        This matter is before the Court on separate motions to dismiss Plaintiff's Class

11   Action Complaint by Defendants United States Department of Agriculture ("UDSA") and

12   Tom Vilsack ("Federal Defendants") and Defendant Will Lightbourne ("State

13   Defendant").  Dkt. Nos. 30 ("Fed. Mot."), 31 ("State Mot.").  After carefully considering

14   the parties' written and oral arguments, the Court hereby GRANTS the Defendants'

15   motions, for the reasons set forth below.

16

17   **BACKGROUND**

18        The Supplemental Nutrition Assistance Program ("SNAP") is a federally-funded

19   food assistance program administered by the states.  *See* 7 U.S.C. § 2011 *et seq*.  SNAP is

20   designed to alleviate hunger by supplementing the monthly food budgets of low-income

21   households throughout the United States.  Dkt. No. 1 ("Compl.") ¶ 11; Dkt. No. 38

22   ("Opp'n") at 1.  Plaintiff is one of the millions of Americans who rely on monthly food

23   assistance through SNAP to survive.  Compl. ¶¶ 1, 14, 24.

24        In September 2015, a Congressional budget impasse nearly caused a federal

25   government shutdown.  *Id.* ¶ 2.  If Congress did not reach agreement on federal

26   appropriations before the fiscal year beginning October 1, 2015, a "funding gap" would

27   have resulted and the federal government would have been forced to "begin[] a 'shutdown'

28   of affected activities, including the furlough of non-essential personnel and curtailment of

United States District Court
Northern District of California

agency activities and services." *Id.* ¶ 15.  On September 23, 2015, with such a shutdown looming, the USDA sent a letter to state SNAP administrators stating, "should Congress fail to act . . . [t]his would require USDA to take steps, including the deauthorization of retailers in the first several days of the month to prevent SNAP benefits from being redeemed during an appropriations lapse." *Id.* ¶ 18.  A spokeswoman for USDA also stated, "[i]f Congress does not act to avert a lapse in appropriations, then USDA . . . will be forced to stop providing benefits within the first several days of October," and "[o]nce that occurs, families won't be able to use [SNAP] benefits at grocery stores to buy the food their families need." *Id.* ¶ 17.  Fearing this outcome, Plaintiff filed the Complaint on September 30, 2015, seeking declaratory and injunctive relief on behalf of a nationwide class of SNAP beneficiaries.  *Id.* at 17.  The Complaint brings three claims: violation of the Administrative Procedures Act, 5 U.S.C. § 500; violation of the Food and Nutrition Act of 2008, 7 U.S.C. § 2011; and Declaratory Relief pursuant to 28 U.S.C. §§ 2201-02.  *Id.* ¶¶ 65-73.

But the threatened federal shutdown never occurred.  On September 30, 2015, Congress passed an appropriations measure temporarily continuing funding for federal projects and activities.  Continuing Appropriations Act, 2016, Pub. L. No. 114-53, 129 Stat. 502 (Sept. 30, 2015).  Congress later passed a permanent resolution that authorized funding for the federal government (and SNAP) through the 2016 fiscal year.  Consolidated Appropriations Act, 2016, Pub. L. 114-113, 129 Stat 2242 (Dec. 18, 2015).  Congress also provided for a SNAP contingency fund of $3 billion through December 31, 2017 and extended the existing $3 billion contingency fund through December 31, 2016 (rather than September 30, 2016, as planned).  *Id.*

**LEGAL STANDARD**

Dismissal is appropriate under Federal Rule of Civil Procedure ("Rule") 12(b)(1) when a federal court lacks subject-matter jurisdiction.  Federal courts' subject-matter jurisdiction is limited by Article III's "case or controversy" clause, which requires, among

United States District Court
Northern District of California

2

other things, that a plaintiff have standing, that the plaintiff's claims be "ripe" for adjudication, and that the plaintiff's claims not be "moot." *Allen v. Wright*, 468 U.S. 737, 750 (1984). Standing, ripeness, and mootness are therefore appropriate topics on a Rule 12(b)(1) motion to dismiss. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Because standing and mootness both pertain to a federal court's subject-matter jurisdiction under Article III, they are properly raised in a motion to dismiss under [Rule] 12(b)(1).")). These requirements extend throughout the life of a litigation. *See Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th Cir. 2010) ("A case or controversy must exist at all stages of review, not just at the time the action is filed.").

The party asserting federal subject-matter jurisdiction bears the burden of establishing its existence. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). But in reviewing a Rule 12(b)(1) motion to dismiss, courts must take the allegations in the plaintiff's complaint as true and draw "all reasonable inferences in [plaintiff's] favor." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). A Rule 12(b)(1) motion may be facial or factual: "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

**DISCUSSION**

The Federal and State Defendants both move to dismiss the Complaint for lack of subject-matter jurisdiction under Rule 12(b)(1), on the grounds of standing (i.e., lack of injury-in-fact), prudential ripeness, mootness, and that Plaintiff does not challenge a final agency action. Fed. Mot. at 8-18; State Mot. at 6-10. The State Defendant also moves to dismiss the Complaint under Rule 12(b)(6), on the basis that Plaintiff fails to allege sufficient facts to state a claim against Director Lightbourne. State Mot. at 4-6.

United States District Court
Northern District of California

**I.  Plaintiff's allegations fail to satisfy Article III's case or controversy requirement.**

Even assuming Plaintiff suffered an injury-in-fact and that her claims were ripe at the time of filing, this Court would lack subject-matter jurisdiction under Article III if Plaintiff's claims are now moot.  *White*, 227 F.3d at 1242.  The Court therefore addresses this issue first.

"A case becomes moot when interim relief or events have deprived the court of the ability to redress the party's injuries."  *Am. Cas. Co. of Reading, Pa. v. Baker*, 22 F.3d 880, 896 (9th Cir. 1994) (quoting *United States v. Alder Creek Water Co.*, 823 F.2d 343, 345 (9th Cir. 1987)).  "The basic question is whether there exists a present controversy as to which effective relief can be granted."  *Id.* (quoting *Village of Gambell v. Babbitt*, 999 F.2d 403, 406 (9th Cir. 1993)).  If not, then federal courts lack jurisdiction because "moot questions require no answer."  *Wolfson*, 616 F.3d at 1053 (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).  Accordingly, "[e]ven where litigation poses a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'"  *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (internal quotation marks omitted).

There is, however, an exception to the mootness doctrine for cases "capable of repetition, yet evading review."  *So. Pac. Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498, 515 (1911).  This exception permits moot actions to proceed only "in exceptional situations" and only where two requirements are simultaneously met: "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again."  *Wolfson*, 616 F.3d at 1053-54 (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 481 (1990)).[1]

---

[1]  The parties disagree about who shoulders the burden of demonstrating mootness. *Compare* Opp'n at 14, 17 (citing cases) *with* Dkt. No. 40 ("Fed. Reply") at 5-6 (same).

United States District Court
Northern District of California

1  It is the mootness exception's second requirement that dictates the outcome of this

2  case.[2]  Both Defendants argue the number of contingencies that would need to align render

3  the possibility of future injury to Plaintiff too remote to be considered "capable of

4  repetition, yet evading review."  Fed. Mot. at 12-13; State Mot. at 9-10.  The Federal

5  Defendants summarize these contingencies as follows:

6  

7  

8  

9  

10  

11  

12  

13  

14  

15  

16  

> For plaintiff to suffer a concrete and particularized injury in the future, and actually lose SNAP benefits as a result of a lapse in appropriations, a series of speculative events would have to occur. . . . First, there would need to be a lapse in appropriations at a point in time when plaintiff is receiving SNAP benefits.  Although plaintiff asserted that she was a SNAP beneficiary at the time of the complaint, it is based purely on conjecture that she would be a beneficiary at some future point in time when there would supposedly be a lapse in appropriations.  Second, the lapse in appropriations would need to encompass the USDA, unlike the extended lapses that occurred in 1995 and 1996.  Third, no other alternative funding would have to exist, unlike when the American Recovery and Reinvestment Act ultimately had the effect of immunizing SNAP benefits from being affected during the 2013 shutdown.  Fourth, the shutdown would need to last long enough to outlast sufficient contingency funding . . . .  And, finally, the statutory scheme in place at this hypothetical future date would need to be analyzed to determine whether SNAP benefits would be affected due to insufficient funding.

17  Fed. Mot. at 12-13 (citations omitted).  The Federal Defendants further explain – and

18  Plaintiff does not contest, Opp'n at 4-5 – that "such a series of events have never occurred

19  

---

20  But placing the burden would have no effect on the disposition of this case, as the following analysis would render Plaintiff's claims moot and the mootness exception

21  inapplicable even if Defendants shoulder the burden of demonstrating as much.

22  [2]  Indeed, rather than arguing that her injury is not moot, Plaintiff proceeds directly to arguing that the mootness exception applies to her claims.  *See* Opp'n at 1 ("[T]his case is

23  not moot, as Plaintiff more than makes a showing that another government shutdown and interruption of SNAP is *capable of repetition* . . . .") (emphasis added).  This was for good

24  reason; courts have found shutdown-based injuries to be moot even where, unlike here, the shutdown did actually occur, once the government is again funded.  *See infra* at 6-7

25  (discussing cases dismissed as moot even where suit was brought *during* a government shutdown).  And the Defendants proceed directly to the second requirement in arguing that

26  the mootness exception does not apply to Plaintiff's claims.  *See* State Mot. at 9 ("The latter of these requirements forecloses any consideration of Plaintiff's action under this

27  exception to mootness."); Fed. Mot. at 12-13 (explaining why any future injury is too speculative to qualify under the mootness exception).  The focus has therefore correctly

28  been placed on the second requirement of the mootness exception, i.e., whether Plaintiff has a reasonable expectation that she will be subjected to the same action again.

in the past and no one, including plaintiff, has [ever] lost SNAP benefits as a result of a

lapse in appropriations."  Fed. Mot. at 12.

In light of this speculative series of events, Plaintiff's response that future SNAP

interruption is "a possibility" because future congressional appropriations are "far from

certain," Opp'n at 8, falls short of creating a reasonable expectation that Plaintiff's injury –

"that of losing her SNAP benefits because of a government shutdown," *id.* at 10 – will

recur and compel Plaintiff to file this same action again.  Rather, the chain of events

necessary to bring about the same injury and the same action is simply too speculative for

the Court to conclude that this is one of those "exceptional situations" where the mootness

exception should apply.  *Wolfson*, 616 F.3d at 1053-54.

Moreover, holding that the mootness exception does not apply is consistent with

the few cases that have considered the mootness doctrine in the context of a government

shutdown.  For example, in holding that the mootness exception did not apply to a lawsuit

by government employee associations challenging the requirement that they work without

compensation during a budgetary impasse, one district court explained:

> [P]laintiffs have not demonstrated that there is a reasonable
> expectation that they will be subjected to the same action
> again.  It would be entirely speculative for this Court to attempt
> to predict if, and when, another lapse in appropriations may
> occur, how long that lapse might be, which agencies might be
> subject to the lapse, which employees might be affected, and
> whether employees will be required to work without
> compensation.  Moreover, it is significant that no lapse in
> appropriations occurred for either federal fiscal years 1997 or
> 1998.  Further, not only has there not been a governmental
> shutdown since 1995, Congress has appropriated and the
> President has signed appropriations acts for each federal
> agency for federal fiscal years 1997 and 1998.

*Am. Fed'n of Gov't Emps. v. Rivlin*, 995 F. Supp. 165, 166 (D.D.C. 1998).  *See also*

*Leonard v. U.S. Dep't of Def.*, 38 F. Supp. 3d 99, 106 (D.D.C. 2014) (dismissing lawsuit as

moot once government shutdown ended "[b]ecause the likelihood that these events will

reoccur is, at best, speculative"); *Alaska v. Jewell*, No. 4:13-cv-00034-SLG, 2014 WL

3778590, at *3 (D. Alaska July 29, 2014) (dismissing lawsuit as moot once government

shutdown ended because "even if the history of government funding gaps makes it

United States District Court
Northern District of California

6

reasonable to expect that another shutdown will occur at some point in the future, it does not make it reasonable to expect that Defendants' response to a future shutdown would be the same as the response to the 2013 shutdown").[3]  So too here.

Accordingly, the Court now finds that Plaintiff's claims are moot and the exception for cases "capable of repetition, yet evading review" does not apply.  Because Plaintiff's claims are moot, it is unnecessary for the Court to address any of Defendants' remaining arguments for dismissal, including both Defendants' jurisdictional arguments rooted in standing, ripeness, and final agency action, and the State Defendant's argument that Plaintiff failed to state a claim against Director Lightbourne.

## II.   Jurisdictional discovery would not resolve the Complaint's defects.

Plaintiff also argues, correctly, that jurisdictional discovery would be proper if this were a factual challenge and relevant jurisdictional facts were in contest.  Opp'n at 10 (citing *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003)).  But here, the areas for which Plaintiff identifies a need for jurisdictional discovery are immaterial to the facial jurisdictional challenge the Court has ruled on.

First, Plaintiff claims she needs discovery on whether a government shutdown was actually imminent at the time she filed the Complaint, to demonstrate she did indeed suffer an injury-in-fact.  Dkt. No. 38-1 ("Nguyen Decl.") ¶¶ 3-5.  But such backward looking discovery would serve to prove only that Plaintiff has standing.  As explained above,

---

[3]   Plaintiff cites only one shutdown case where the court held that any injuries were not mooted by subsequent funding.  In *Pratt v. Wilson*, Aid to Families with Dependent Children ("AFDC") recipients brought an action challenging California officials' refusal to release funds for the AFDC program due to a California budget impasse, and the court applied the "capable of repetition, yet evading review" exception.  770 F. Supp. 539, 543 (E.D. Cal. 1991).  But *Pratt* only confirms that the exception does not apply in this case. In *Pratt*, the district court found the complained action was reasonably likely to recur because: (1) California had "not timely adopted a budget in five of the last eight years"; and (2) "this case constitutes the second time the plaintiff class has faced the issue."  *Id.* at 543.  In contrast, lapses in federal appropriations have been much less common, *see* Opp'n at 4-5 (discussing the three federal lapses that have occurred in the last twenty years), and Plaintiff does not contend that she (or anyone) has "los[t] . . . SNAP benefits because of a government shutdown," *id.* at 10.

however, it is not necessary to decide whether Plaintiff has standing; the Court lacks subject-matter jurisdiction, irrespective of standing, because Plaintiff's claims are moot.

Second, Plaintiff claims she needs discovery on the sufficiency of any contingency funding in the event of a government shutdown, including information on the planned use of such funds when a shutdown loomed in 2015. *Id.* ¶¶ 6-7; Opp'n at 6 n.5. As discussed above, however, the insufficiency of contingency funding is only one in a series of contingencies that must present for there to be a "reasonable expectation" that Plaintiff's SNAP benefits would be discontinued (for the first time ever) on some future date. Even assuming the insufficiency of future contingency funding, then, Plaintiff's future harm is still too speculative to be "capable of repetition yet evading review." Discovery on this topic is therefore likewise unwarranted.

Finally, Plaintiff claims she needs discovery on the extent of the State Defendant's involvement in the Federal Defendants' plan to withhold SNAP benefits during a government shutdown, Nguyen Decl. ¶¶ 8-9; Opp'n at 2 n.2, 21-22, 22 n.10, and on whether the USDA's decision to suspend SNAP benefits in the event of a shutdown constitutes a final agency action, Nguyen Decl. ¶ 10; Opp'n at 2 n.1. As discussed above, however, it is not necessary to decide these issues; the Court lacks subject-matter jurisdiction, irrespective of their outcome, because Plaintiff's claims are moot.[4,5]

---

[4] For similar reasons, it is not necessary for the Court to strike any factual allegations in the Federal Defendants' motion as improperly raised. *See* Opp'n at 9 n.8. By and large, the Federal Defendants assumed the truth of the facts asserted in Plaintiff's Complaint. The few extraneous factual allegations contained in the Federal Defendants' motion – the "news articles" that Plaintiff claims were not properly raised, *id.* – pertain to the issue of standing. *See* Fed. Mot. at 6 ("[W]idespread news reports that preceded the filing of the complaint suggested a deal had already been made among the House of Representatives, the Senate, and the White House for funding the government through December 11, 2015."). As discussed above, however, it is not necessary to decide whether Plaintiff has standing; the Court lacks subject-matter jurisdiction, irrespective of standing, because Plaintiff's claims are moot. The Court therefore did not consider these new articles, improperly raised or otherwise, in holding that Plaintiff's claims are moot, and the challenge upon which the Court decided the Federal Defendants' motion remains facial.

[5] For similar reasons, the supplemental material identified in Plaintiff's Administrative Motion for Leave to File Supplemental Materials in Support of Opposition to Defendants' Motions to Dismiss, Dkt. No. 42, would not impact the disposition of the present motions. The documents identified therein are immaterial to the outcome of the present motions, as they pertain to the very same areas for which Plaintiff sought (unnecessary) jurisdictional

United States District Court
Northern District of California

**CONCLUSION**

There is no denying that SNAP provides vitally important food budget assistance to millions of Americans each month.  There is likewise no denying that an actual discontinuation of SNAP benefits would cause serious and far-reaching injury to the millions of Americans who rely on SNAP to fight hunger.  But federal courts cannot hear a claim if it does not present a live case or controversy, for the simple reason that federal courts lack the judicial power to do so under Article III.  And for the reasons set forth above, this Court lacks subject-matter jurisdiction over Plaintiff's claims.  Accordingly, Defendants' motions to dismiss are GRANTED.


**IT IS SO ORDERED.**


Dated:   08/08/16

_____
THELTON E. HENDERSON
United States District Judge

---

discovery: standing; the sufficiency of contingency funding; the extent of the State Defendant's involvement; and final agency action.  *Id.* at 2.  Accordingly, the Court DENIES Plaintiff's motion to supplement her opposition to the Defendants' motions with these irrelevant materials.